

MAR 25 2024

CLERK, U.S. DISTRICT COURT
IN RICHMOND, VA

MAR 12 2024

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | **UNDER SEAL** |
| v. | Criminal No. 4:24-cr-⅛ |
| **RICKY DAMION CHRISTOPHER JONES, JR.,** a/k/a "Top!," (Counts 1–8) | 18 U.S.C. § 1951(a)<br>**Conspiracy to Interfere with Commerce by Robbery**<br>(Count 1) |
| **DASHAWN TYRIK EVANS-MCCLOUD,** a/k/a "Shawn" a/k/a "RI$E," (Counts 1–8) | 18 U.S.C. §§ 1951(a) and 2<br>**Interference with Commerce by Robbery**<br>(Counts 2–3) |
| **SAMIR AS-SAD HURD** a/k/a "Prodigy" (Counts 1–9) | 18 U.S.C. §§ 111(b) and 2<br>**Assault of a Federal Employee with a Dangerous Weapon**<br>(Counts 4–5) |
| **CHANZ LAMARION POUGH,** a/k/a "Up" a/k/a "NSO Up" (Counts 1, 8) | 18 U.S.C. § 1704 and 2<br>**Stealing Keys Adopted by the Post Office**<br>(Counts 6–7) |
| **MANRAY A. C. PERRY,** (Counts 1, 2, 4, 6) | 18 U.S.C. §§ 1349<br>**Conspiracy to Commit Bank Fraud**<br>(Count 8) |
| Defendants. | 18 U.S.C. §§ 922(j) and 2<br>**Possession of a Stolen Firearm**<br>(Count 9) |
|  | 18 U.S.C. §§ 924(d), 981(a)(1)(C);<br>28 U.S.C. § 2461<br>**Criminal Forfeiture** |



Amended

## INDICTMENT

March 2024 Term – at Newport News, Virginia

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

At all times relevant to the Indictment, unless otherwise stated:

1.     The victim business, the United States Postal Service ("USPS" or "Postal Service"), is an independent federal agency headquartered in Washington, D.C., with a universal service obligation to provide postal service in all areas and communities of the United States. The USPS has the largest retail network in the United States and provided postal services to more than 152 million residential delivery points and almost 13 million business ones, with almost 140,000 blue collection boxes in use nationwide in 2022, including throughout the Eastern District of Virginia. In addition to its letter and package delivery services, the USPS also provides financial services by way of postal money orders, more than 66 million of which it issued in 2022, and governmental services, like processing passport applications. It is the largest postal service in the world, delivering almost half (44%) of the world's total mail volume last year.

2.     The USPS, and in particular via its mail delivery services achieved through its letter carriers, is a vital element, tool, facility, and part of interstate and foreign commerce and at all times material to this Second Superseding Indictment, was engaged in receiving and selling goods, financial instruments, and services in interstate and foreign commerce and an industry which affects interstate and foreign commerce. The USPS conducts business in and affecting interstate commerce because it sells goods and services that are manufactured or received from or require or result in performance outside of Virginia, such as selling stamps, postal insurance, packaging materials, money orders, and dead letter items; and providing not only services such as passport applications, which are shipped to processing centers outside Virginia, but also mail and package delivery services whereby individuals and businesses, including those within Virginia, use it to send to and receive from businesses and individuals, including those from outside Virginia, among

-2-

other things, currency and its equivalents; documents and legal and financial instruments in furtherance of that commerce, such as contracts and receipts; and items purchased in interstate and foreign commerce or items used in the production of such items.

3.      Since 2022, USPS has continued to harden the collection box inventory across the country against traditional fishing-related mail theft, wherein thieves "fish" letters through mail slots to steal, for instance, checks to "wash" them to enter new amounts and payees, or others' personal and financial information for use in identity theft and financial fraud schemes.

4.      While such hardening has made traditional collection box fishing more difficult, USPIS has seen an increase in the theft of "arrow keys," the master keys authorized USPS personnel use to access the variety of mail repositories, including blue collection boxes, outdoor parcel lockers, cluster box units, and apartment panels, all of which serve as authorized depositories and collection points for postal service matters within the meaning of 39 U.S.C. § 102. The functionality of arrow keys is subject to limits, including specified geographic restrictions that limit the functionality of a given arrow key series to collection boxes in a defined area.

5.      These keys are sold for thousands of dollars on the black market, as criminals seek to acquire them to facilitate the theft of U.S. Mail in connection with other lucrative criminal schemes, like check fraud and identity theft.

6.      Arrow keys are distributed through authorized USPS channels to authorized personnel (e.g. mail carriers) and used in the performance of official duties as generally defined within the meaning of 39 U.S.C. § 403. Because of their wide-ranging access and related value, the possession, use, and transfer of arrow keys is highly regulated, leading criminals to steal them from postal workers through actual or threatened violence; to recruit postal employee co-

conspirators from whom to lease their arrow keys; and to purchase the keys illicitly in criminal marketplaces, e.g. via the Dark Web.

7.      In Fiscal Year 2022 (FY22), approximately 412 USPS letter carriers were robbed during the course of their official duties. With 305 incidents reported in the first half of FY23, such incidents are becoming more prevalent. USPS likewise reported an increase in high-volume mail theft incidents from mail receptacles, including blue collection boxes: 38,500 in FY22 and more than 25,000 in the first half of FY23.

8.      In or about May 2023, United States Postal Inspection Service (USPIS) and other law enforcement agencies began an investigation into two armed robberies of mail carriers for their arrow keys and related property that occurred within the Eastern District of Virginia, to wit:

        a.      of a fifty-three-year-old male carrier at or about 3:45 p.m. [1] on or about May 8, 2023, in the 2600 block of Ballentine Boulevard in Norfolk (the "Norfolk Robbery");

        b.      of a thirty-three-year-old male carrier at or about 3:20 p.m. on or about May 9, 2023, in the 100 block of Galax Street in Hampton (the "Hampton Robbery").

9.      During the investigation of the Hampton and Norfolk Robberies, Inspectors identified co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), DA'TWAN K. WATSON (a/k/a "DT"), and JAYDEN STUKES, together with Individual K.H., as those responsible for or connected to the Hampton Robbery. FORD organized the group and acted as the gunman, while WATSON was provided an additional show of force being present on scene during the robbery, and STUKES arranged the necessary transportation (by K.H.) to achieve the robbery, as well as providing some reconnaissance with respect to the carrier's location.

---

[1] Unless noted otherwise, all times are local.

10.     Investigators likewise identified co-conspirators FORD, MANRAY A.C. PERRY, and Unindicted Co-Conspirator A.C. (a minor) as being responsible for the Norfolk Robbery, with A.C. acting as the gunman, PERRY serving as the getaway driver, and FORD organizing the robbery overall and providing the additional support in the field.

11.     FORD, WATSON, and STUKES were charged for their roles in the Norfolk and Hampton Robberies in the Eastern District of Virginia in *United States v. Ford, et al.*, 4:23-cr-51, in July 2023, which indictment was superseded in August 2023. In December 2023, all three co-defendants pleaded guilty, with STUKES and WATSON each pleading guilty to one count of interfering with commerce by robbery each in connection with the Hampton Robbery, and with FORD pleading guilty to conspiring to interfere with commerce by robbery, as charged in Count One, and to using, carrying, and brandishing a firearm during and in relation to, and possessing a firearm in furtherance of a crime of violence (the Hampton Robbery) an additional count of and each pleaded guilty in December 2023.

12.     USPIS Inspectors also became aware that the Norfolk and Hampton Robberies were related to a spree of similar attempted and completed armed robberies of mail carriers on or about July 20, 2023, in James City County and the City of Hampton in the Eastern District of Virginia (the "JCC-Hampton Robberies"), to wit:

a.     the attempted robbery of a thirty-seven-year-old female carrier at or about 1:20 p.m. in the 900 block of Coleman Drive in James City County;

b.     the armed robbery of a fifty-nine-year-old male carrier at or about 2:28 p.m. in the 3700 block of West Steeplechase Way in James City County; and

c.     the armed robbery of a twenty-five-year-old female carrier at or about 3:10 p.m. in the 300 block of Harbor Drive in Hampton.

13.     EVANS-MCCLOUD, the gunman in the JCC-Hampton Robberies, fled the area to an apartment leased by JONES, where he was staying. Pursuant to state search warrants, searches of that apartment revealed scant furniture but numerous tools and indicia of check washing, card cracking, and similar bank fraud schemes, including higher-level printers arrested as the gunman in the JCC-Hampton Robberies, and both the stolen arrow keys, one on a paper labeled "Hampton" and the other on a paper labeled "William."

14.     Inspectors and other law enforcement officers learned that these robberies did not occur in a vacuum. Rather, they were committed by FORD and his co-conspirators (in furtherance of a larger, multi-object conspiracy. The goals of their conspiracy were not only to steal arrow keys from USPS carriers at gunpoint and then use those keys to break into USPS collection boxes to steal mail, all with the goal of using checks and personal information from the stolen mail to further the bank fraud and related identity theft crimes. The co-conspirators had years of experience in those or similar fraud schemes.

15.     While the conspiracy was multi-faceted, it was also explicitly articulated in a group on the encrypted instant messaging platform Telegram called "🗝 🗝 🗝" (hereinafter "Three Keys"), which name referred to the function and goal of the conspiracy: the theft of arrow keys.

16.     Specifically, on or about April 17, 2023, at or about 10:51 p.m., SAMIR AS-SAD HURD (as "Prodigy") invited FORD (as "John Jack") to the Three Keys group. When FORD joined, the group already had two other members in addition "Prodigy" (HURD): "Top!" later determined to be RICKY DAMION CHRISTOPHER JONES, JR., and "Woo," the leader of the scheme. Shortly thereafter, at or about 10:59 p.m., "RI$E," later determined to be DASHAWN EVANS-MCCLOUD (a/k/a "Shawn"), joined as well.

17.     Woo instructed the others on every aspect of the operation, from which keys to get ("arrows or small key") to methods to evade detection by law enforcement "no phones when on drill" but "burners" and a "rental" car), as shown below (FORD on the right, the others on the left):



18.     Woo warned the group about the seriousness of the penalties ("This shit fed time. Shit not sweet."). But when Top! casually referred to using a firearm on the carriers ("pole em up"), far from objecting, Woo merely corrected Top! as to the exact phrasing of the demand:



19.     When Woo asked whether they all had masks, RI$E responded on behalf of the other group members in the affirmative ("yeah cuh we all do"), and Top! offered to get the rental:



20.     When Top! mentioned "shoot[ing] the mailman," Woo reaffirmed that pistol-whipping the carriers ("smack em do s[u]m") would be sufficient:



21.     While Woo provided additional detailed steps to help evade law enforcement (e.g. changing from dark to bright clothing), his primary emphasis was that the participants should go to ground. Above, he also directed them in particular to refrain from committing the identity theft and related fraud crimes that were the ultimate goal of the robberies ("[d]on't fish [o]r any scams"). Top! made fun of Woo's caution and jokingly removed him from the group:



22.     As the Norfolk and Hampton Robberies approached, the discussion traffic among the Three Keys co-conspirators increased. Significantly, given the discussion of how to use the firearms on the carriers earlier in the group, FORD repeatedly sought to purchase firearms both before and after the Norfolk and Hampton Robberies, particularly from HURD, despite having already been warned that he was too young to possess a handgun legally. When discussing firearms, he and other co-conspirators and associates often referred to firearms by their makes and models or using slang or coded language like "pole," "jawn," "blick," "glizzy," "joint," etc.

23.     Immediately before the Norfolk Robbery, on May 7, FORD contacted HURD saying that he "need[ed] pole frrr ASAP." While HURD initially told FORD that his $200 was not

enough, he soon provided FORD with the Smith & Wesson firearm FORD then used in the Norfolk and Hampton Robberies.

24.     Likewise, on May 28, 2023, FORD posted a photograph that appeared to show himself pointing a purple and black firearm with a visible serial number, later identified as a SCCY CPX1CBPURD bearing serial number 893774 reported on or about the afternoon of May 17, 2023, to have been stolen from the trunk of a vehicle located in Portsmouth, Virginia, within the preceding five days, that is at a time during or after on or about the afternoon of May 12, 2023. Subsequent investigation revealed that that firearm came from HURD and that FORD had only possessed it briefly, returning it to HURD in a very short amount of time.

25.     After conducting reconnaissance on the Hampton area and picking Unindicted Co-Conspirator A.C. up after she got out of school, FORD, PERRY, and A.C. committed the Norfolk Robbery, though they were captured on residential surveillance cameras in the process.

26.     The co-conspirators also used the group to disseminate relevant information both before and after the robbery, including vehicle rental information, information related to the collection boxes, photographs of the firearm and keys after each of the robberies, and images with the keys and a handwritten note "@wealthier," referring to an electronic money transmitting account associated with JONES.

27.     Financial records also reveal the extent of the co-conspirators' joint operations. For instance, shortly after the Norfolk Robbery, JONES paid FORD $1000 for the robberies, structured into three back-to-back payments of $360, $40, and $600. Such structured payments were common among the members of the group, in an effort to obscure their fraudulent activities. There are numerous examples of one co-conspirator transferring several hundred dollars to another within a

matter of minutes, and then the second co-conspirator transferring a similar (if not identical) amount of money back to the original co-conspirator.

28.     Likewise, the co-conspirators often used other individuals' identifying information, including accounts in friends' or relatives' names, to conduct their operations. For instance, the $1000 JONES paid to FORD came from the account of a "David Smith," despite JONES being the sole signatory on the account and it being used for his business, Top Snkrz LLC.

29.     FORD's arrest on or about June 6, 2023, did not hamper the efforts of the remaining co-conspirators, who likewise each played a vital role with respect to the JCC-Hampton robberies: EVANS-MCCLOUD as the gunman, HURD as the getaway driver, JONES providing the residence as a base of operations, as well as bankrolling the operation, and POUGH – a childhood friend of JONES's and friend of the rest – renting the vehicle for them, as he had done in the past.

30.     POUGH was also critical with respect to the bank fraud. Subsequent investigation revealed that JONES, EVANS-MCCLOUD, HURD, and POUGH had been engaging in lucrative bank and wire fraud schemes known as "card cracking," "check washing," or "smacking the account." Those methods involve depositing a counterfeit, whether altered or entirely fabricated, check into a third-party account, then trying to withdraw or spend down as much of that money as possible before the fraudulent check is detected and the account frozen or transaction reversed.

31.     The third-party account is either one fraudulently established using the means of identification of an identity theft victim – including from sensitive personally identifiable information gleaned from stolen mail – or is of an individual who willingly joins the conspiracy in exchange for a portion of the ill-gotten proceeds.

32.     Though POUGH lived in Maryland, he would frequently travel back to this area, so his co-conspirators, particularly JONES, would use his address as a "drop" for credit and debit

cards in the names of others, which POUGH would then bring back down to the co-conspirators. POUGH knew what they were doing and received several thousand dollars from the co-conspirators over the preceding few years.

33.     The co-conspirators even used their own identities for these schemes. For instance, EVANS-MCCLOUD and FORD had numerous discussions about his opening an account and getting a card from Flagstar bank to use to defraud the bank ("smack[ing] the card"). FORD sent a picture of the mailing with the card when it arrived but was arrested soon thereafter. While in jail, FORD spoke with HURD, and they discussed whether HURD (who also had several discussions with FORD on the topic) or EVANS was going to finish using the card in the fraud scheme, and HURD assured FORD that EVANS-MCCLOUD had the card. The card was located inside JONES's apartment on the night of EVANS-MCCLOUD's arrest.

34.     Flagstar Bank is a financial institution, as defined by 18 U.S.C. § 20, because it is an insured depository institution, as defined in section 3(c)(2) of the Federal Deposit Insurance Act.

## COUNT ONE
(Conspiracy to Interfere with Commerce by Robbery)

35.     The factual allegations contained above are incorporated herein by reference as if set out in full.

36.     Beginning on a date unknown to the United States, but no later than in or about April 17, 2023, and extending through at least on or about July 20, 2023, within the Eastern District of Virginia and elsewhere, RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), SAMIR AS-SAD HURD (a/k/a "Prodigy"), CHANZ LAMARION POUGH (a/k/a "Up" a/k/a "NSO Up"), and MANRAY A. C. PERRY, the defendants herein, along with co-conspirators O'SIRUS LANDRES

CHARLES FORD (a/k/a "Siris"), DA'TWAN K. WATSON (a/k/a "DT"), JAYDEN STUKES, and unindicted co-conspirator A.C., and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other, unlawfully to obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, and the movement of articles and commodities in commerce, by robbery, as those terms are defined in 18 U.S.C. § 1951, by the unlawful taking and obtaining of business property from the person and in presence of a victim employee of the victim business, the United States Postal Service, which conducts business in and affecting the interstate and foreign commerce as individuals and businesses, including those within Virginia, use it to send to and receive from businesses and individuals outside Virginia, among other things, currency and its equivalents; documents and legal and financial instruments in furtherance of that commerce, such as contracts and receipts; and items purchased in interstate and foreign commerce or items used in the production of such items.

## WAYS, MANNER, AND MEANS OF THE CONSPIRACY

37.     The primary purpose of the conspiracy was to rob USPS mail carriers of arrow keys in their possession.

38.     It was a part of the conspiracy that the defendants and coconspirators planned to and did rob at least four mail carriers in the Hampton Roads metropolitan area.

39.     It was part of the conspiracy that the defendants and coconspirators arranged transportation in connection with the robberies, including via car-sharing applications.

40.     It was further part of the conspiracy that during at least four of the robberies, one or more of the coconspirators displayed and brandished a firearm to USPS employees, threatening to use violence unless the employees provided the arrow keys and other property to the coconspirators.

41.     It was further part of the conspiracy that the defendants and coconspirators communicated with each other by cellular telephones, social media, and encrypted messaging services before and after the robberies in planning and organizing the robberies and in arranging payment for and transfer of the ill-gotten property and to co-conspirators and aiders and abettors in furtherance of their participation in the robberies.

42.     It was further a part of the conspiracy that the coconspirators communicated about evading possible detection by law enforcement in connection with and criminal liability for their roles and the roles of others in the conspiracy.

## OVERT ACTS

43.     During the course of and in furtherance of the conspiracy, and to effect the objects thereof, at least one of the coconspirators committed or caused to be committed at least one of the following acts, among others, in the Eastern District of Virginia:

a.     On or about May 8, 2023, one or more coconspirators accosted an employee of USPS, the victim business, in or about the 2600 block of Ballentine Boulevard in Norfolk, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

b.     On or about May 8, 2023, one or more coconspirators possessed and brandished a firearm at an employee of USPS, the victim business, in or about the 2600 block of Ballentine Boulevard in Norfolk, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

c.     On or about May 8, 2023, one or more coconspirators took an arrow key and a postal identification from an employee of USPS, the victim business, in or about the 2600 block of Ballentine Boulevard in Norfolk, Virginia, while the victim was performing the official

duty of delivering U.S. mail along the victim's mail delivery route.

d.      On or about May 8, 2023, one or more coconspirators transferred possession of the keys and distributed money as payment for the acquisition of the keys and participation in the robbery.

e.      On or about May 9, 2023, one or more coconspirators accosted an employee of USPS, the victim business, in or about the 100 block of Galax Street in Hampton, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

f.      On or about May 9, 2023, one or more coconspirators possessed and brandished a firearm at an employee of USPS, the victim business, in or about the 100 block of Galax Street in Hampton, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

g.      On or about May 9, 2023, one or more coconspirators took an arrow key from an employee of USPS, the victim business, in or about the 100 block of Galax Street in Hampton, Virginia, while the victim was performing the official duty of delivering U.S. mail along the victim's mail delivery route.

h.      On or about July 20, 2023, one or more coconspirators possessed a firearm while chasing an employee of USPS, the victim business, in or about the 900 block of Coleman Drive in James City County, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route. That victim carrier was able to drive away before being apprehended.

i.      On or about July 20, 2023, one or more coconspirators possessed and brandished a firearm at an employee of USPS, the victim business, in or about the 3700 block of West

Steeplechase Way in James City County, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

        j.      On or about July 20, 2023, one or more coconspirators took an arrow key from an employee of USPS, the victim business, in or about the 3700 block of West Steeplechase Way in James City County, Virginia, while the victim was performing the official duty of delivering U.S. mail along the victim's mail delivery route.

        k.      On or about July 20, 2023, one or more coconspirators possessed and brandished a firearm at an employee of USPS, the victim business, in or about the 300 block of Harbor Drive in Hampton, Virginia, while the victim employee was performing the official duty of delivering U.S. mail along the mail delivery route.

        l.      On or about July 20, 2023, one or more coconspirators took an arrow key from an employee of USPS, the victim business, in or about the 300 block of Harbor Drive in Hampton, Virginia, while the victim was performing the official duty of delivering U.S. mail along the victim's mail delivery route.

        m.      On or about July 20, 2023, one or more coconspirators transferred possession of the keys and distributed money as payment for the acquisition of the keys and participation in the robbery.

        (All in violation of 18 U.S.C. §§ 1951(a) and 2.)

## COUNT TWO
### (Interference with Commerce by Robbery)

THE GRAND JURY FURTHER CHARGES THAT:

44.     The factual allegations contained above are incorporated herein by reference as if set out in full.

45.     On or about May 8, 2023, in the Eastern District of Virginia and elsewhere, co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris") and unindicted co-conspirator A.C., together with co-conspirators and defendants herein MANRAY A. C. PERRY, RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), SAMIR AS-SAD HURD (a/k/a "Prodigy"), and others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, and the movement of articles and commodities in such commerce, by robbery, as those terms are used in 18 U.S.C. § 1951, in that the defendant and others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did unlawfully take and obtain, and attempt to take and obtain, property of the victim business, the United States Postal Service, from the person and in the presence of one of its employees performing official duties in or about the 2600 block of Ballentine Boulevard in Norfolk, Virginia, against the employee's will by means of actual and threatened force, violence, and fear of injury, immediate and future, to said employee.

(In violation of 18 U.S.C. §§ 1951(a) and 2.)

-17-

## COUNT THREE
### (Interference with Commerce by Robbery)

THE GRAND JURY FURTHER CHARGES THAT:

46.     The factual allegations contained above are incorporated herein by reference as if set out in full.

47.     On or about May 9, 2023, in the Eastern District of Virginia and elsewhere, co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), DA'TWAN K. WATSON (a/k/a "DT"), and JAYDEN STUKES, together with co-conspirators and defendants herein RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), and SAMIR AS-SAD HURD (a/k/a "Prodigy"), along with others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, and the movement of articles and commodities in such commerce, by robbery, as those terms are used in 18 U.S.C. § 1951, in that the defendant and others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did unlawfully take and obtain, and attempt to take and obtain, property of the victim business, the United States Postal Service, from the person and in the presence of one of its employees performing official duties in or about the 100 block of Galax Street in Hampton, Virginia, against the employee's will by means of actual and threatened force, violence, and fear of injury, immediate and future, to said employee.

(In violation of 18 U.S.C. §§ 1951(a) and 2.)

<u>COUNT FOUR</u>
(Assault of a Federal Employee with a Dangerous Weapon)

THE GRAND JURY FURTHER CHARGES THAT:

48.     The factual allegations contained above are incorporated herein by reference as if set out in full.

49.     On or about May 8, 2023, in the Eastern District of Virginia and elsewhere, MANRAY A. C. PERRY, a defendant herein, together with co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris") and unindicted co-conspirator A.C., together with co-conspirators and defendants herein RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), SAMIR AS-SAD HURD (a/k/a "Prodigy"), along with others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in section 1114 of Title 18 of the United States Code, while such person or persons were engaged in, or on account of the performance of, official duties, and did use a deadly and dangerous weapon in the commission of these acts, specifically brandishing a firearm at the victim USPS employee.

(In violation of 18 U.S.C. §§ 111(b) and 2.)

-19-

<u>COUNT FIVE</u>
(Assault of a Federal Employee with a Dangerous Weapon)

THE GRAND JURY FURTHER CHARGES THAT:

50.     The factual allegations contained above are incorporated herein by reference as if set out in full.

51.     On or about May 9, 2023, in the Eastern District of Virginia and elsewhere, co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), DA'TWAN K. WATSON (a/k/a "DT"), and JAYDEN STUKES, together with co-conspirators and defendants herein RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), and SAMIR AS-SAD HURD (a/k/a "Prodigy"), along with others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in section 1114 of Title 18 of the United States Code, while such person or persons were engaged in, or on account of the performance of, official duties, and did use a deadly and dangerous weapon in the commission of these acts, specifically brandishing a firearm at the victim USPS employee.

(In violation of 18 U.S.C. §§ 111(b) and 2.)

## COUNT SIX
(Stealing Keys Adopted by the Post Office)

THE GRAND JURY FURTHER CHARGES THAT:

52.     The factual allegations contained above are incorporated herein by reference as if set out in full.

53.     On or about May 8, 2023, in the Eastern District of Virginia, a defendant herein, together with co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris) and unindicted co-conspirator A.C., together with co-conspirators and defendants herein MANRAY A. C. PERRY, RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), SAMIR AS-SAD HURD (a/k/a "Prodigy"), and others known and unknown to the Grand Jury, aided, abetted, counseled, commanded, induced, and procured by each other, did knowingly and unlawfully steal and purloin a key suited to locks adopted by the United States Postal Service and in use on bags containing mail, lock bags, lock drawers, and other authorized receptables for the deposit of mail matter.

(In violation of 18 U.S.C. §§ 1704 and 2.)

<u>COUNT SEVEN</u>
(Stealing Keys Adopted by the Post Office)

THE GRAND JURY FURTHER CHARGES THAT:

54.     The factual allegations contained above are incorporated herein by reference as if set out in full.

55.     On or about May 9, 2023, in the Eastern District of Virginia and elsewhere, co-conspirators O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), DA'TWAN K. WATSON (a/k/a "DT"), and JAYDEN STUKES, together with co-conspirators and defendants herein RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), and SAMIR AS-SAD HURD (a/k/a "Prodigy"), aided, abetted, counseled, commanded, induced, and procured by each other and others known and unknown to the Grand Jury, did knowingly and unlawfully steal and purloin a key suited to locks adopted by the United States Postal Service and in use on bags containing mail, lock bags, lock drawers, and other authorized receptables for the deposit of mail matter.

(In violation of 18 U.S.C. §§ 1704 and 2.)

## COUNT EIGHT
(Conspiracy to Commit Bank Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

56.     The factual allegations contained above are incorporated herein by reference as if set out in full.

57.     Beginning at a date unknown to the Grand Jury, but believed to be no later than in or about May 2023, and continuing through a date unknown but believed to be through in or about at least July 2023, in the Eastern District of Virginia, the defendants, RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!"), DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E"), SAMIR AS-SAD HURD (a/k/a "Prodigy"), CHANZ LAMARION POUGH (a/k/a "Up" a/k/a "NSO Up"), together with co-conspirator O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of, financial institutions as defined under 18 U.S.C. § 20 by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344.

## WAYS, MANNER, AND MEANS OF THE CONSPIRACY

The ways, manner, and means by which the foregoing objectives of the conspiracy to commit bank fraud were to be accomplished included, but were not limited to, the following:

58.     The primary purpose of the conspiracy and scheme and artifice was for the defendants and co-conspirators to obtain through fraudulent means money, credits, assets, securities, and other property owned by and under the control of financial institutions located in

the Eastern District of Virginia and elsewhere, including Flagstar Bank, by negotiating and then drawing against stolen or counterfeit financial instruments.

59.     It was part of the conspiracy and the scheme and artifice that the defendants and co-conspirators obtained stolen financial instruments, including checks, by either stealing them from the legitimate account holders or otherwise obtaining them.

60.     It was further part of the conspiracy and the scheme and artifice that the defendants and co-conspirators unlawfully and improperly obtained and used arrow keys, including by stealing them directly from USPS carriers, to be able to break into collection boxes and steal U.S. mail, either containing checks that could be stolen, altered, or counterfeited, or otherwise obtaining the necessary means of identification to open fraudulent accounts in the victims' names.

61.     It was further part of the conspiracy and scheme and artifice that the defendants and co-conspirators advertised on social media to locate and elicit third-party account holders willing to participate in the scheme.

62.     It was further part of the scheme and artifice to defraud that the defendants, together with and aided and abetted by others known and unknown to the Grand Jury, would attempt to draw down the fraudulent accounts within hours or days of when those funds became available, so as to extract the maximum amount of ill-gotten gain before the fraud was detected and the funds frozen or rendered unavailable.

63.     It was further part of the scheme and artifice to defraud that the defendants would use their own identities for these schemes, with O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris") opening an account with Flagstar Bank for the express purpose of "smacking the card" with DASHAWN TYRIK EVANS-MCCLOUD (a/k/a "Shawn" a/k/a "RI$E") and SAMIR AS-

SAD HURD (a/k/a "Prodigy"), by which they were referring to depositing an invalid check and attempting to withdraw the funds before the fraud was detected.

64.     It was further part of the scheme and artifice to defraud that the defendants communicated over recorded telephone calls in the jail about executing the scheme and artifice to defraud as to Flagstar Bank.

65.     It was further part of the scheme and artifice to defraud that the defendants enlisted CHANZ LAMARION POUGH (a/k/a "Up" a/k/a "NSO Up") to serve as an address to receive fraudulent credit cards and other banking materials then to transport those materials from his home in Maryland to the Hampton Roads area for purposes of executing the bank fraud scheme.

66.     It was further part of the scheme and artifice to defraud that RICKY DAMION CHRISTOPHER JONES, JR., (a/k/a "Top!") maintained a residence in the 5800 block of Newtown Arch in Virginia Beach, Virginia, for the purpose of housing materials and tools related to counterfeiting checks as part of the overall scheme to defraud.

(In violation of 18 U.S.C. § 1349.)

## COUNT NINE
(Possession of a Stolen Firearm)

THE GRAND JURY FURTHER CHARGES THAT:

67.     The factual allegations contained above are incorporated herein by reference as if set out in full.

68.     On or about May 28, 2023, in the Eastern District of Virginia, the defendant, SAMIR AS-SAD HURD (a/k/a "Prodigy"), together with co-conspirator O'SIRUS LANDRES CHARLES FORD (a/k/a "Siris"), did knowingly possess a stolen firearm , to wit, a SCCY CPX1CBPURD semi-automatic pistol bearing serial number 893774, said firearm having been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe the firearm was stolen.

(In violation of 18 U.S.C. §§ 922(j) and 2.)

<u>FORFEITURE</u>

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.      The defendant, if convicted of any of the violations alleged in Counts One, Two, Three, and Eight of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2.      The defendant, if convicted of any of the violations alleged in Counts One, Two, Three, Four, Five, and Nine of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any firearm or ammunition used in or involved in the violation.

3.      If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with 18 U.S.C. §§ 924(d)(1), 981(a)(1)(C); and 28 U.S.C. § 2461(c).)

UNITED STATES v. RICKY DAMION CHRISTOPHER JONES, JR. (a/k/a "Top!"), *et al.*,
4:24-cr- 18

Pursuant to the E-Government Act
the original of this page has been filed
under seal in the Clerk's Office

A TRUE BILL:


REDACTED COPY

_____
F O R E P E R S O N


JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Julie D. Podlesni
Assistant United States Attorney
Virginia State Bar No. 77198
Office of the United States Attorney
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia  23606
Tel. (757) 591-4000 | Fax (757) 591-0866
Julie.Podlesni@usdoj.gov