### IN UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA,**

v.     Criminal No. 4:22CR-00074 (DJN)

**SAMIR AS-SAD HURD,**

    **Defendant.**

### MOTION FOR VARIANCE SENTENCE

COMES NOW, the defendant, Samir As-Sad Hurd, by counsel, and hereby moves this Honorable Court for a variance sentence of one hundred thirty (130) months. In support of this motion, the defendant states the following, reserving the right to amend, modify or supplement this Position should it become appropriate.

**I.     Procedural Background**

The defendant was charged in a two-count criminal information with Interference with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951(a) and (2); and Using, Carrying and Brandishing a Firearm During and in Relation to, and Possessing and Brandishing in Furtherance of a Crime of Violence. On September 16, 2024, the defendant appeared before this Honorable Court and entered a plea of guilty to both counts. The Court set sentencing for January 28, 2025.

The probation department has calculated the defendant's guidelines as on Count 1 as 87-108 months. On Count 2, the guidelines provisions call for a seven (7) year

sentence consecutive to all counts.  The total overall guidelines range in this case results in an overall guideline range of 171-192 months.

## II.      Argument

Hurd respectfully requests that the Court impose a total sentence of one hundred and fifty-four (154) months. Post-*Booker*, a sentencing court must engage in a multi-step process that begins with correctly determining the defendant's Guideline range. United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." Id. (alterations in original) (internal quotation marks omitted). "In doing so, the district court should first look at whether a departure is appropriate based on the Guidelines Manual or relevant case law." Id. If it is, the court may depart, or if the "departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a 'variance sentence')." Id. As part of this process, "[t]he district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range." Id.

"Variant" sentences are drawn from consideration of the sentencing factors set forth in § 3553(a). See Irizarry v. United States, 553 U.S. 708, 714-15 (2008); see also United States v. Rivera-Santana, 668 F.3d 95, 100 n.6 (4th Cir. 2012) (discussing the difference between a departure, a sentence imposed by reference to the defendant's guidelines range, and a variance, "a non-Guidelines sentence" that is justified on the basis of the § 3553(a) factors) (citation omitted).

Hurd submits that a total sentence of one hundred and fifty-four (154) months is adequate, but not longer than necessary, to meet the requirements of 3553 and respectfully requests that the Court impose this variant sentence. Hurd believes that the totality of the circumstances supports his request.

### Hurd's Age Warrants a Variance

At the time of the offenses at issue in this case, Hurd was just twenty-two (22) years old. In his article, "Development of brain behavior integration systems related to criminal culpability from childhood to young adulthood: Does it stop at 18 years?," Ruben C. Gur explained that:

> the research on brain development and maturity indicates that the brain systems that are immature in governing the behavior of 17-year-olds, which guided the Supreme Court in Roper to ban the execution of persons committing the offense under the age of 18 years, are equally or indistinguishably immature from their development in the 18- through 20-year-old population. The 18- to 20- and probably up to 22 year-old population then is just as vulnerable to the effects on behavior (especially behavioral control) of the lack of maturation of these brain structures and functions as are 17-year-olds.[1]

At the time of these offenses, Hurd was just 22 years old. Despite having graduated high school, his academic record could only be characterized as poor. Gur explained:

> Notably, since brain development in the relevant areas goes in phases that vary in rate, and is usually not complete before the early to mid-20s, there is no way to state with any scientific reliability that an individual 20-year-old has a fully matured brain (and should be eligible for the most severe punishment), no matter how many otherwise accurate tests and measures might be applied to him at the time of his trial for capital murder. This is similar to other physical characteristics such as height. While we know in detail the age at which the average adults reach their maximal height, predictions for individuals are not easy to make.[2]

---

[1] Development of brain behavior integration systems related to criminal culpability from childhood to young adulthood: Does it stop at 18 years? – PMC (pmc.ncbi.nlm.nih.gov/articles/PMC8439426).
[2] Id.

Gur concludes his article by stating that " key elements of the control systems of the brain are not yet physically or functionally mature in such individuals and are thus functioning below the capacity they will reach within a few more years of aging." The actions in the commission of the offenses to which the defendant pled guilty demonstrate reckless and impulsive behavior over a relatively short period of time while he was just 22 years old. To be clear, counsel is not attempting to justify Hurd's actions in any way; he is simply requesting that the Court consider all facts and circumstances surrounding these offenses in determining the appropriate sentence. Hurd submits his age at the time of the offense, as well as the age he will be when he completes the requested sentence are appropriate grounds for a variance from the recommended sentence of 171-192 months.

Currently twenty-four (24) years old, Hurd has been incarcerated since he was arrested on March 19, 2024. The requested sentence, plus five (5) years of supervised release, will have him under the auspices of the criminal justice system until he is in his mid-thirties, when he has a better grasp on what he will need to do to be a contributing member of society.

### Hurd's Upbringing Warrants a Variance

Hurd's upbringing is somewhat troubling. Brown submits that the lack of adequate supervision played a significant role in his development. Again, counsel does not seek to justify Hurd's actions, but seeks only to offer an explanation to the Court as to why Brown finds himself where he does at such a relatively young age.

A 2015 study examined the relationship between different levels of parental involvement and recidivism among juvenile offenders at a detention facility.[3] The study

---

[3] "Exploring the relationship between parental supervision and recidivism among juvenile offenders at a juvenile detention facility." The Free Library. 2015 Pi Gamma Mu 02 Oct.

was conducted by "examining whether a relationship exists between parental supervision/involvement and recidivism among juvenile offenders at a South Carolina detention facility."[4] The study cited an earlier article which reached the conclusion that "family disruption and poor parental supervision do impact juvenile recidivism."[5] This study found that 73% of risk factors that led to delinquency were mediated by parental discipline and supervision, and further, that "parental rejection, hostility towards adolescents, poor communication, and ineffective supervision of children were found to be significant risk factors associated with delinquent behavior by adolescents."[6] The study explained that research showed that "a lack of parental supervision may also serve a dual role in determining youth involvement in delinquent behavior and recidivism."[7] The results demonstrated that of the parents interviewed, "the majority of parents scored higher on poor parental monitoring/permissive supervision and inconsistent disciplinary practices," and that these parents "almost never engaged in their children's activities." Hurd was abandoned by his mother when he was an infant. And while the fractured relationship with his father has mended over the years, in the formative years of his life, his father was absent.

---

2022 https://www.thefreelibrary.com/Exploring+the+relationship+between+parental+supervision+and...-a0417610914
[4] Id.
[5] James F. Alexander and Thomas L. Sexton," Family-Based Empirically Supported Treatment Interventions," The Counseling Psychologist 30(2) (2002): 238-61.
[6] Id.
[7] David Huh, Jenifer Tristan, Emily Wade, and Eric Stice, "Does Problem Behavior Elicit Poor Parenting? A Prospective Study of Adolescent Girls," Journal of Adolescent Research 21, (2006):185-204.

IV.     Conclusion

For the foregoing reasons, the defendant respectfully requests that this Honorable Court sentence him to serve a total sentence of one hundred and thirty (130) months followed by a period of supervised release.

Respectfully submitted,

By:_____/s/_____
                Counsel

Jose E. Aponte, Esquire
BainSheldon, PLC
9030 Three Chopt Road
Suite B
Richmond, Virginia 23229
T: (804) 282-8625
F: (804) 282-8629
VSB #: 42201
japonte@bainsheldon.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2025, I filed this Motion for Variance Sentence with the Clerk of the Court, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
                Counsel